**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0254n.06

**No. 08-6133**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| 600 MARSHALL ENTERTAINMENT CONCEPTS, LLC, d/b/a THE SPOT, | ) ) ) | **FILED**<br>**Apr 26, 2010**<br>LEONARD GREEN, Clerk |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | |
| THE CITY OF MEMPHIS, | ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| Respondent-Appellee, | ) ) | |
| and | ) ) | **O P I N I O N** |
| MEMPHIS MEDICAL CENTER, a Division of the Memphis Bio-Works Foundations, | ) ) ) | |
| Intervenor-Appellee, | ) ) | |
| PERMIT OFFICE OF THE CITY OF MEMPHIS, | ) ) | |
| Respondent. | | |

**BEFORE: SUTTON, KETHLEDGE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** 600 Marshall Entertainment Concepts, LLC ("600 Marshall"), the business located at 598, 600, and 616 Marshall and 631 Madison in Memphis, Tennessee, sought a permit from the City of Memphis ("City") to provide compensated, semi-nude dancing at that location after acquiring the property in 2005. The City initially issued the permit, but quickly revoked it on the ground that 600 Marshall was located in a zoning area in which adult entertainment had not been permissible since 1993. 600 Marshall sought an injunction and

declaratory relief in the district court, asserting that it is entitled to a Compensated Dance Permit

("CDP") allowing nudity despite the zoning restrictions because there has been a continuous, lawful,

non-conforming adult-entertainment use at the location since before the 1993 ordinance went into

effect. After a trial, the district court found that 600 Marshall had not carried its burden of proving

it was entitled to "grandfathering," and therefore denied the requested injunction, finding it

unnecessary to reach 600 Marshall's constitutional claims. This appeal followed. We vacate and

remand for reconsideration by the district court.

## I. Background

600 Marshall is within the zoning district known as the Central Business District ("CBD").

The CBD was created by city ordinance, effective in 1981. Adult entertainment[1] was permitted in

---

[1] Memphis, Tenn., Code § 16-8-2 defines "adult entertainment," stating in relevant part:
> *Adult entertainment:* Adult entertainment means and includes any and all of the following:
> d. "Live performance" means an establishment where "specified sexual activities" or "specified anatomical areas," as these terms are later defined in this section, are performed live or displayed for actual observation by patrons therein.

The terms "specified anatomical areas" and "specified sexual activities" are defined:
> *Specified anatomical areas:*
> a. Less than completely and opaquely covered:
> (1) Human genitals, pubic region,
> (2) Buttock, and
> (3) Female breast below a point immediately above the top of the areola; and
> b. Human male genitals in a discernible turgid state, even if completely and opaquely covered.
> Specified sexual activities:
> a. Human genitals in a state of sexual stimulation or arousal;

the CBD from 1981 to 1993, provided that a Certificate of Occupancy, also known as a Use and

Occupancy permit ("U & O"), issued by the Memphis and Shelby County Office of Construction

Code Enforcement, a Special Use Permit,[2] and other required permits were obtained and maintained

by the facility. A facility's U & O designation was determined by its predominant use. In 1993, the

City and Shelby County issued Joint Ordinance No. 4209 ("the 1993 Ordinance"), which eliminated

adult entertainment as one of the permitted uses within the CBD.

Businesses within the CBD that seek to allow dancing of any kind must complete an

Application for Public Dance Hall Permit,[3] which asks applicants whether the establishment will

"feature" adult entertainment and, if so, to describe the type of entertainment that will be provided.[4]

Lilli Jackson ("Jackson"), an official with the City of Memphis Office of Permits and Licenses,

---

> b. Acts of human masturbation, sexual intercourse or sodomy;
> c. Fondling or other erotic touching of human genitals, pubic region,
>    buttock or female breast;
> d. Acts of bestiality

[2]The "Special Use Permit" requirement was later found unconstitutional and was no longer required as of 1992.

[3]Memphis, Tenn., Code § 6-20-4, first enacted in 1967, states:
> It is unlawful for any person or dance hall operator to hold or conduct any public dance, or to operate any public dance hall within the city, until such dance hall, or other place in which such public dance may be held, shall first have been duly registered as a public dance hall with, and approved by, the city treasurer, and a permit shall have been issued by the city treasurer, or his or her designee, for the operation of such public dance hall or the holding of such public dance.

[4] Question Seven of the City of Memphis Permit Office's "Application for Public Dance Hall Permit" asks "Will this establishment feature adult entertainment? If yes, describe completely and exactly the type of entertainment which will be provide [*sic*] to your customers."

testified that the Office created the Dance Hall Permit application form based on the ordinance requirements.[5] The application also asks whether anyone at the establishment will accept compensation for dancing, directly or indirectly.[6] Since at least 1991, there has not been a CDP issued for any of the businesses at the 600 Marshall location, although there have been numerous Dance Hall Permits issued.[7]

Various entities have conducted business at the 600 Marshall location as a bar, club, or other similar facility since at least the 1970's. The district court found that from the 1970's until the early 1990's, operators at the location on occasion presented or allowed adult entertainment including: male dancers dancing with erections, male strippers, adult films, female nudity, and shows with simulated sex acts.

Nathan Rosengarten ("Rosengarten") began working at 600 Marshall in 1993 or 1994, and subsequently ran the facility beginning in 1996 or 1997. Rosengarten assumed the lease of the club in February 2000, and began renting the facility out for different events. His annual Applications for Public Dance Hall Permits never stated that the facility would feature adult entertainment or that

---

[5]*See* Memphis, Tenn., Code § 6-20-5 (detailing information to be included in Dance Hall Permit application).

[6]Question Eight of the City of Memphis Permit Office's "Application for Public Dance Hall Permit" asks "Will there be any person(s) in this establishment that accept compensation directly or indirectly for dancing?," and provides the option of checking "Yes" or "No".

[7]A Public Dance Hall Permit allows a venue to operate a business where patrons are dancing; a Compensated Dance Permit is required for any public dance hall that "schedules or permits any person to accept compensation directly or indirectly for dancing, if alcoholic beverages, beer or wine are served in the same room where dancing occurs." Memphis, Tenn., Code § 6-20-11(C).

there would be compensated dancers. Rosengarten's insurance applications for 600 Marshall also indicated that the business would not have adult entertainment or compensated dancers.

Rosengarten did, however, testify that during his association with the venue, adult films, fetish parties, gothic parties, male strippers, and musical acts at the location on occasion included the exposure of genitalia and breasts, and that patrons sometimes exposed themselves as well. Many of the performers were not compensated and many of the acts were not dance performances. Jason Kamp and Bryant Tucker, two periodic patrons of the 600 Marshall location in the late 1990s and early 2000s, testified to observing acts that would qualify as adult entertainment but would not require a CDP, such as wet tee-shirt contests that would often end in women removing their shirts, men exposing their penises, and women who exposed their breasts, buttocks, and vaginas without dancing, or who either simulated or engaged in sex acts such as masturbation.[8] Some of these incidents were promoted by club management, but others were not.

On August 15, 2005, Charles G. Westlund ("Westlund") entered into an agreement to purchase 600 Marshall. Westlund purchased the property with the intention of operating an adult nightclub providing compensated adult entertainment dancing. He testified that prior to the purchase he conducted a due-diligence investigation that included speaking with Jackson, the City's Permits/License Manager, who told him he could obtain the required permits to operate an adult

---

[8]Kamp stated that "the girl would get up there and shake, a lot of times they—they'd call it contests and they would get up there for between a hundred, two, three hundred dollars, and a lot of time do wet T-shirt contests and a lot of time strip down pretty much naked."

entertainment venue. He also spoke with previous owners, operators, employees, and others who knew of the past activities at 600 Marshall.

Also on August 15, 2005, 600 Marshall applied for a Beer Permit with the Licensing Commission of the City, and for a CDP through the City's Permits and Licensing Department. On its Application for Public Dance Hall Permit, 600 Marshall indicated both that it would feature adult entertainment and that it would offer dancers receiving compensation. 600 Marshall obtained the beer permit and, on September 16, 2005, it was issued a CDP. 600 Marshall then applied for a U & O on September 22, 2005, and was granted one that did not allow for adult entertainment.

On September 26, 2005, Jackson informed 600 Marshall by letter that the permits office was reviewing whether the CDP was granted in error. Jackson testified that she had concerns based on 600 Marshall's location and consulted with city attorneys and zoning officials. On October 4, 2005, Jackson sent 600 Marshall a letter revoking the CDP, stating that upon further review, the City had determined that 600 Marshall was within the Central Business Improvement District[9] ("CBID") and therefore ineligible for a CDP:

> . . . [I]t has been confirmed that your establishment is located within the Central Business Improvement District (CBID) and, therefore, the site was and is ineligible for a compensated dance permit.
> This [*sic*] CBID is intended to permit a mixture of uses and activities that will complement the sports and entertainment facilities that are located in this area. For this reason, the Memphis and Shelby County Zoning Ordinance sets forth the types of entities that are permitted within the CBID boundaries . . . . It further lists the entities that are prohibited within the CBID area. Section 35(1)(D) specifically

---

[9]Memphis, Tenn., Code § 12-32 creates the Central Business Improvement District. The CBID is a tax overlay district that geographically coincides with the CBD zoning district.

provides that "Adult entertainment shall not be permitted" within the CBID boundaries.
. . .
Inasmuch as the issuance of the permit was in error, the Permit Department must rescind its issuance of the compensated dance permit to your establishment . . . .

During her testimony, Jackson appeared to assume that issuance of a CDP meant a facility was providing what she considered adult entertainment, i.e., a strip club or similar venue. Jackson also testified that she did not receive training regarding the City ordinance governing the issuance of Dance Hall Permits or CDPs, and the City did not issue any additional documents, instructions, or directives regarding administration of the ordinance. Similarly, the City did not supply any documents, instructions, or directives that informed applicants how to properly fill out the Application for Public Dance Hall Permit. Jackson testified that if adult entertainment had occurred on the property in the past but was of a nature that did not require a CDP, the Permit Office would have no record of that.

Westlund testified that as a result of the revocation, he believed that he could not operate an adult entertainment nightclub, or even a non-adult entertainment nightclub with clothed, compensated dancers. The district court held that because the letter did not contain a provision staying the revocation, 600 Marshall's CDP was null and void as of its issuance.

600 Marshall availed itself of the City's administrative channels to seek review of the revocation of the CDP.[10] On November 2, 2005, a three-member panel designated by Larry Godwin

_____

[10]The review of a revocation of a CDP is governed by Memphis, Tenn., Code § 6-20-10:
> If a public dance hall permit has been issued under the provisions of
> this chapter, and such public dance hall is being conducted in

("Godwin"), Director of Police Services, heard 600 Marshall's appeal and ultimately found that the permit was "wrongfully revoked and that the permit should be reissued immediately conditioned on prohibition of any adult entertainment or activity . . . unless and until the Petitioner receives the proper approvals from the Building Official." Dedrick Brittenum, a member of the panel, testified that the reason for the panel's decision was that, in their view, the issuance of a CDP is unrelated to the presence of adult entertainment. On December 15, 2005, Godwin rejected the panel's findings and recommendations, writing: "I do not accept the recommendation of this Panel. This application is denied." Godwin testified that he was unfamiliar with the CDP scheme and he assumed that the purpose of the panel was to determine why the permit was issued in error, not whether it should be re-issued. Godwin was not present at the administrative hearing and did not review the transcript

violation of the laws of this state or of this chapter, or of any other law or ordinance relating to the operation of public dance halls, the director of police services may at any time give notice in writing to the holder of the permit or other person in control of the operation and maintenance of such public dance hall that the permit has been revoked and cancelled. Such written notice shall state the reason for such revocation and cancellation and shall become a final revocation and cancellation after the expiration of ten (10) days from the date of service of such notice, unless on or before the expiration of such ten (10) days the permit holder or other person in control of the operation and maintenance of the public dance hall shall file with the director of police services a written request for a hearing before him or her upon the question whether or not the permit should have been revoked and cancelled. Such hearing shall be held by the director or his or her designated representative within thirty (30) days after the date of the filing of such request therefor, and the action and judgment of the director of police services, after hearing all the evidence and facts, shall be final and subject to court reviews [*sic*] as provided by law.

or evidence from the hearing. Sometime later, as a result of negotiations, 600 Marshall ultimately received a CDP with restrictions as to nudity.

On November 17, 2005, subsequent to the panel hearing, but prior to Godwin's ultimate decision regarding the panel's recommendation, 600 Marshal sought judicial review of the administrative denial of its CDP allowing nudity in the Shelby County Chancery Court pursuant to Tenn. Code Ann. § 27-9-111.[11] On November 28, 2005, the City of Memphis removed the action to the District Court for the Western District of Tennessee based on the civil rights and constitutional claims alleged in the petition pursuant to 28 U.S.C. §§ 1441 and 1443.[12]

The district court denied 600 Marshall's request for a preliminary injunction and conducted a two-day bench trial, which resulted in a finding that 600 Marshall had not carried its burden of showing a lawful, sufficiently continuous, non-conforming adult entertainment use that would entitle

---

[11]Tenn. Code Ann. § 27-9-111(e) states:
> If the final decision of a board or commission revokes, suspends, or denies a license or permit that is required prior to engaging in conduct protected by the First Amendment to the Constitution of the United States, and either the petitioner or the respondent requests an expedited hearing, the court shall immediately grant the writ of certiorari, and shall hear the matter and issue its decision within forty (40) days of the court granting the writ of certiorari. When an expedited hearing is requested, the board or commission shall forward the transcript described in § 27-9-109 within seven (7) days of the grant of the writ of certiorari.

[12]On May 18, 2006, the district court consolidated the initial complaint with another complaint by 600 Marshall also based on the denial of a CDP, but asserting different claims.

it to "grandfathering." The district court declined to reach 600 Marshall's constitutional claims, concluding that it need not do so because it ruled against 600 Marshall on statutory grounds.

## II. Denial of Injunctive and Other Relief

The district court found that 600 Marshall did not qualify for grandfathering because it had not established that there had been lawful adult entertainment at 600 Marshall at the time the 1993 Ordinance was enacted, and further, even if there had been such activities at that time, 600 Marshall had not established that such use had been lawfully maintained throughout the period leading to Westlund's purchase of 600 Marshall in 2005.

"This court reviews a district court's legal conclusions *de novo* and its findings of fact under the clearly erroneous standard." *Great Lakes Expl. Group, L.L.C. v. Unidentified Wrecked & (for Salvage-Right Purposes), Abandoned Sailing Vessel,* 522 F.3d 682, 687 (6th Cir. 2008). The party seeking the protection of a grandfather statute has the burden of proving "a pre-existing non-conforming use qualifying for protection." *Lamar Tennessee, LLC v. City of Hendersonville*, 171 S.W.3d 831, 836 (Tenn. Ct. App. 2005). To meet this burden, 600 Marshall must show "(1) a change in zoning restrictions, and (2) permissive operation of the business prior to the change." *Id.*

The district court found, and all agree, that there was a change in zoning restrictions for the CBID in 1993, eliminating adult entertainment as a permitted use. Therefore, 600 Marshall satisfies the first prong of the test.

To establish the second prong, 600 Marshall must first show that the business provided adult entertainment lawfully prior to the 1993 zoning change. "It is implicit in the law that the

'grandfathering clause' of any statute, resolution or ordinance contemplates a lawful activity being conducted which becomes a non-conforming use after passage of a statute, resolution or ordinance." *Coe v. City of Sevierville*, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000).

The district court found that there was insufficient evidence to show that businesses operating at the same location as 600 Marshall provided adult entertainment lawfully prior to the 1993 ordinance. The district court's principal basis for this conclusion was the absence of any record of CDPs for the location during that time. However, this rationale fails to account for adult entertainment that would not fall within the requirements of a CDP. The universe of adult entertainment, as defined, is not identical to the universe of activity that requires a CDP. Although compensated dancing, including compensated dancing involving nudity, did require a CDP (as long as alcohol was being served in the same room), it appears that until very recently there was no "Adult Entertainment" U & O designation, and thus no special permit was required for adult entertainment of a variety that did not involve compensated dancing.[13] Thus, the district court's reliance on the absence of CDPs as definitively establishing that no adult entertainment was lawfully provided at the premises prior to 1993 does not withstand review.

---

[13]During trial, Allen Medlock, an official in the office of Construction Code Enforcement for Memphis and Shelby County, testified that there has not been a specific U & O designation for adult entertainment until recently when one was instituted in response to a prior lawsuit.

The district court's conclusion that the businesses preceding 600 Marshall either abandoned adult entertainment between 1993 and 2005,[14] or provided it unlawfully, is subject to a similar deficiency. Although Rosengarten did not indicate on his Public Dance Hall Permit applications an intent to "feature" adult entertainment, that failure would only support that any adult entertainment that was both "featured" and covered by the City's dance permits was either abandoned or took place unlawfully, but cannot be the basis for the conclusion that adult entertainment use as a whole was abandoned.

Therefore, we remand to the district court to decide whether there were adult entertainment activities at 600 Marshall that did not require a CDP sufficient to substantiate grandfathering, and whether those activities were of a continuing nature. In its analysis, the district court should first assess whether there was lawful adult entertainment of a type that did not require a CDP prior to 1993. It should then consider both whether prior owners of 600 Marshall abandoned or discontinued adult entertainment use under Memphis, Tenn., Code § 16-116-2(F), and also whether any prior owner effected a change in use under § 16-116-2(E).

Further, if the district court concludes that 600 Marshall is entitled to grandfathering based on prior adult entertainment activities that do not require a CDP, the district court should rule on whether allowing adult entertainment that does require a CDP would violate Memphis, Tenn., Code

---

[14]Under the Memphis ordinances, a venue engaging in a nonconforming use loses the right to such use if it changes to a conforming use for a period of seven days, or abandons or discontinues the nonconforming use for a period of 365 days. Memphis, Tenn., Code §§ 16-116-2 (E) & (F) (2007).

§ 16-116-2(C)(3), which prohibits the expansion of a nonconforming use "in such a manner as to conflict with, or to further conflict with . . . any use limitations established for the district in which such use is located."

### III.  600 Marshall's Constitutional Claims

600 Marshall also claims that the district court erred in not addressing its constitutional claims.  We agree, and remand for consideration of these claims by the district court.

The district court declined to reach 600 Marshall's constitutional claims because it believed it had resolved the issues on a statutory basis.  It is true that "[i]t is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *United States v. Ovalle,* 136 F.3d 1092, 1100 (6th Cir. 1998) (quoting *Burton v. United States,* 196 U.S. 283, 295 (1905)).  But the "doctrine of strict necessity" only properly terminates inquiry when the resolution of the non-constitutional question makes the constitutional analysis unnecessary. *See Nagy v. Farmers Ins. Exch.,* 758 F.2d 189, 192 (6th Cir. 1985).  Thus, if the district court had held in 600 Marshall's favor on other grounds, it would not need to decide its constitutional claims. *See In re Snyder,* 472 U.S. 634, 642-43 (1985) ("[W]e consider first whether petitioner's conduct and expressions warranted his suspension from practice; if they did not, there is no occasion to reach petitioner's constitutional claims.").  However, because 600 Marshall was denied a remedy on other grounds, the district court was required to address constitutional claims that, if successful, would entitle 600 Marshall to a remedy. *See generally* 16 C.J.S. *Constitutional Law* § 157 (2009) ("The determination of a constitutional question is necessary and proper whenever it is essential to the

decision of the case, as where the right, or the alleged denial of a right, of a party is founded solely on a statute, the validity of which is attacked.").

On remand, therefore, if the district court again determines that 600 Marshall is not entitled to the permit it seeks under a grandfathering analysis, the district court should address any of 600 Marshall's constitutional claims that it has standing to bring and that, if successful, would entitle it to a remedy.

Additionally, 600 Marshall's claim to damages under 42 U.S.C. § 1983 as a result of the revocation of its CDP (a CDP does not in and of itself allow adult entertainment, and compensated dancing not involving adult entertainment is not an excluded use) would survive regardless of the ultimate resolution of the permit issue and must be addressed by the district court.[15]

Because additional factual findings and legal conclusions are necessary for proper adjudication and to enable review, the district court's decision is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.

---

[15]In the district court, 600 Marshall waived its "rights to the loss of business damages." In a Response to Motion to Strike brief to this Court, 600 Marshall clarified that it did not intend to waive its "claim for damages due tot eh [*sic*] deprivation of its Constitutional rights of due process and those under the First Amendment." The record does not support that 600 Marshall waived its entire claim for damages, only that it waived its claim for damages based on the loss of business.